J S - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 21-0326 JGB (KKx)** | Date | November 22, 2023 |
|---|---|---|---|
| Title | ***Sarah Loof, et al. v. Upland Unified School District*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **FINDINGS OF FACT AND CONCLUSIONS OF LAW
(IN CHAMBERS)**

This matter involves an appeal of an administrative special education due process hearing before the California Office of Administrative Hearings ("OAH") pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"). Plaintiffs Sarah Loof ("S.L." or "Student") and Rita Loof ("Ms. Loof") (collectively, "Plaintiffs") seek partial reversal of an OAH decision in which Administrative Law Judge Kara Hatfield ("ALJ") found that S.L. was not eligible for special education and related services after June 30, 2017, and that S.L. subsequently was not entitled to a free appropriate public education ("FAPE") from defendant Upland Unified School District ("UUSD" or "Defendant") thereafter. ("OAH Decision," Dkt. No. 1-1; "Complaint," Dkt. No. 5-1.) The Court **AFFIRMS** the OAH Decision.

On February 7, 2023, Plaintiffs filed their trial brief. ("Plaintiffs' Brief," Dkt. No. 32). In support, Plaintiffs filed a request for judicial notice. ("RJN," Dkt. No. 33.) On March 7, 2023, Defendant filed its trial brief. ("Defendant's Brief," Dkt. No. 34.) That same day, Defendant filed an opposition to Plaintiffs' RJN. ("RJN Opposition," Dkt. No. 35.) On March 21, 2023, Plaintiffs replied to Defendant's Brief. ("Reply," Dkt. No. 36.) On the same day, Plaintiffs replied to the RJN Opposition. ("RJN Reply," Dkt. No. 37.)

Upon review of the parties' trial briefs and the extensive Administrative Record, ("AR," Dkt. No. 28), the Court determines that oral argument is unnecessary for decision on this matter.

## I.   FINDINGS OF FACT[1]

"In bench trials, Fed. R. Civ. P. 52(a) requires a court to 'find the facts specially and state separately its conclusions of law thereon.'"  Vance v. American Hawaii Cruises, Inc., 789 F.2d 790, 792 (9th Cir. 1986) (Fed. R. Civ. P. 52(a)).  "One purpose behind Rule 52(a) is to aid the appellate court's understanding of the basis of the trial court's decision.  This purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions."  Id. (citations omitted).  The following constitutes the findings of fact based on the Administrative Record.

### A.  Request for Judicial Notice

Plaintiffs request that the Court take judicial notice, pursuant to Federal Rule of Evidence 201, of the following facts regarding the publication dates and use of tests related to the following:

1. The online/website of Western Psychological Services and the 2005 date of publication of the TAPS-3;
2. The online/website of Pearson Assessments regarding the Beery-Buktenica Developmental Test of Visual-Motion Integration and its 2010 date of publication;
3. An article from the National Institute of Health's Frontiers in Psychology dated March 13, 2017 and the use of the WISC-IV.

(RJN at 1-2.)

UUSD opposes the RJN on the grounds that the websites reflect "private companies seeking to promote and sell their various materials or promote their study," rather than those typically known to be reputable sources.  (RJN Opposition at 3.)  The Court declines to take judicial notice of these websites because they are not necessary to resolve the instant appeal.  See Baron v. Hyrecar Inc., 2022 WL 17413562, at *6 (C.D. Cal. Dec. 5, 2022) (declining to take judicial notice of documents that were not necessary to resolve the pending motion).  Accordingly, the Court **DENIES** the RJN.

### B.  S.L.'s Background

S.L. is a 25-year-old young woman who was a student with disabilities during the relevant time period.  (Complaint ¶ 4.)  S.L. last attended a UUSD school for kindergarten, during the 2004-2005 school year.  (OAH Decision at 17.)  For first through sixth grades, S.L. attended a traditional, independently operated, parochial school called Our Lady of the Assumption School.  (Id.)  For the 2010-2011 and 2011-2012 school years, seventh and eighth grades, S.L. was enrolled

---

[1] The Court has elected to issue its decision in narrative form because a narrative format more fully explains the reasons behind the Court's conclusions, which aids appellate review.  Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

Page **2** of **10**                    CIVIL MINUTES—GENERAL                    Initials of Deputy Clerk mg

at California Virtual Academy, an online charter school.  (<u>Id.</u>)  On October 6, 2011, Ms. Loof registered what she named Resurrection Academy as a private religious school through the California Department of Education online Private School Affidavit Form process.  (<u>Id.</u>)  Ms. Loof renewed the registrations annually from the 2011-2012 through 2018-2019 school years.  (<u>Id.</u>)

## C.  Procedural History

### 1.  2018 Case

On October 30, 2018, S.L. filed a request for due process hearing with OAH in Case No. 2018110087.  ("2018 Complaint," AR at 501-15.)  On or around May 2, 2019, S.L., her parents, and UUSD entered into a tolling agreement.[2]  ("Tolling Agreement," AR at 520.)
In the 2018 Complaint, Plaintiffs raised the following relevant issues:

- Issue Two: Whether UUSD denied S.L. a FAPE at the October 31, 2016 IEP by failing to offer her an appropriate placement in the least restrictive environment ("LRE") for the 2016-2017 school year and for extended school year ("ESY") 2017.
- Issue Three: Whether S.L.'s parents have ever denied UUSD the ability to assess S.L.
- Issue Four: Whether UUSD's offer for the 2016-2017 school year was appropriate and based on full and complete assessment of S.L.
- Issue Five: Whether UUSD denied S.L.'s parent meaningful participation in the 2016 IEP process when it failed to discuss or consider the private services being provided by UUSD to S.L. and which allowed her to make meaningful educational progress.

(2018 Complaint at 9-11.)

### 2.  Tolling Agreement

The Tolling Agreement provides the following:

- Parties agree that the **sole purpose and effect of this agreement is to toll the statute of limitations applicable to the issues and remedies raised in the [2018 Complaint]** which were not previously barred by a statute of limitations or any other defense.

---

[2] The parties agreed to the Tolling Agreement "in order to allow additional time to resolve the issues raised in the October 3, 2018 complaint filed in this Court against the District—<u>S.L. v. Upland Unified School District</u>, 5:18-cv-2122-JGB-KK (C.D. Cal. 2018)—prior to proceeding to hearing on the issues raised [here]."  (Tolling Agreement ¶ 6.)

- Parties agree that within thirty days of final resolution of the District Court [c]omplaint, [S.L. and her parents] must re-file their request for a due process hearing with OAH on any issues raised in their original [2018 Complaint] that remain unresolved at that time ("Re-Filed [2018 Complaint]"). Parties agree that the Re-Filed 2018 Complaint is subject to the following conditions and limitations:

  o Parties agree that the issues, claims, complaints, contentions, causes of action, remedies, damages, liabilities and/or rights, of any kind or nature, that may be raised in the Re-Filed 2018 Complaint are **limited to those cited in the original 2018 Complaint filed on October 31, 2018**, and which remain unresolved after final resolution of the District Court [c]omplaint.

  o Parties agree that in the event that any issues and/or remedies raised in the 2018 Complaint remain unresolved after final resolution of the District Court [c]omplaint, [S.L. and her parents] may raise and pursue **only those issues and remedies in the Re-Filed 2018 Complaint that [S.L. and her parents] raised in the 2018 Complaint** and which were not previously barred by a statute of limitations or any other defense.

(Tolling Agreement ¶¶ 7(a), 7(c)) (emphasis added.)

### 3.  The Instant Case and Appeal

On August 13, 2019, S.L. filed a request for due process hearing with OAH in Case No. 2019080542 ("First Case"). (OAH Decision at 1.) The original complaint in the First Case did not contain any claims about the 2016-2017 school year. (Id. at 8.) S.L.'s second amended complaint in her First Case ("First Case SAC"), filed on May 4, 2020, included claims related to the 2016-2017 school year. (Id.)

On January 14, 2020, UUSD filed a request for due process hearing in OAH Case No. 2020010465 ("UUSD Case"). (Id.) On April 2, 2020, S.L. filed a request of due process hearing in OAH Case No. 2020040245 ("Second Case"), in which S.L. raised identical claims as those raised in the 2018 Complaint. (Id.) OAH consolidated S.L.'s First Case, Second Case, and the UUSD Case ("Consolidated Case"). (Id. at 1-2.)

On April 24, 2020 and May 8, 2020, UUSD moved to dismiss S.L.'s claims including all claims in the Second Case and the 2016-2017 claims in the First Case SAC, including a claim regarding the S.L.'s October 31, 2016 Individualized Education Plan ("IEP"). (Id. at 9-10.) The ALJ denied UUSD's motions, upheld the validity of the Tolling Agreement, and allowed S.L.'s 2016-2017 claims which had been previously raised in the 2018 Complaint to proceed. (Id. at 10.) Specifically, the ALJ found that Issues 2, 3(b), 3(c), 3(e), 3(g), 4, 6, 7, and 8 were raised for the first time in the First Case SAC and did not fall under the terms of the Tolling Agreement—as such, the claims are barred by the statute of limitations. (Id.) The ALJ allowed Issues 1, 3(a),

---

3(d), 3(f), and 5 to proceed on the basis that they had been raised in the 2018 Complaint and therefore fell under the purview of the Tolling Agreement—"[S.L.]'s attempt to expand her claims beyond the specific claims stated in [S.L.]'s Second Case was improper." (Id. at 10-11.)

Over the course of eleven days in August and September 2020, the ALJ heard the Consolidated Case "OAH Hearing". (See AR at 2561-4454.) The issues raised in the Consolidated Case are listed below:

Student's Issues

1. Did Upland significantly impede Parent's opportunity to participate in the educational decision-making process by failing to explain to Parent why Upland wanted to do additional assessments under an October 19, 2016 assessment plan after having conducted a triennial reassessment in 2015?

2. Did Upland deny Student a free appropriate public education, called a FAPE, by failing to provide Parent prior written notice in response to Parent's October 19, 2016 request for independent educational evaluations?

3. Did Upland deny Student a FAPE in the October 31, 2016 individualized education program, called an IEP, by:

   a. Failing to consider areas of need in which Student had not been assessed, specifically post-secondary transition, central auditory processing, attention, and the need for assistive technology;
   b. Failing to include present levels of performance in all areas of unique need;
   c. Failing to develop appropriate goals based on present levels of performance;
   d. Significantly impeding Parent's opportunity to participate in the educational decision-making process by failing to discuss or consider private services Student was receiving from Lindamood-Bell, tutoring, and speech therapy;
   e. Failing to place Student in the appropriate grade level;
   f. Failing to offer appropriate placement, the least restrictive environment, for the 2016-2017 regular school year and 2017 extended school year; and
   g. Failing to develop an appropriate post-secondary transition plan?

4. Did Upland deny Student a FAPE by failing to provide Parent prior written notice in response to Parent's October 31, 2016 request for independent educational evaluations?

5. Did Upland deny Student a FAPE by failing to timely respond to Parent's October 31, 2016 request for independent educational evaluations, either by funding them or filing to establish Upland's own assessments were appropriate, in the areas of:

   a. Neuropsychology;

---

    b.   Assistive technology; and

    c.   Central auditory processing?

6.  Did Upland deny Student a FAPE by failing to timely assess Student, after Parent's October 31, 2016 request, in all areas of suspected disability, specifically:

    a.   Sensory integration praxis;

    b.   Visual motor integration;

    c.   Visual perceptual skills;

    d.   Magnocellular needs;

    e.   The need for vision therapy;

    f.   The need for an interactive metronome; and

    g.   The need for assistive technology?

7.  Did Upland deny Student a FAPE by failing to provide Parent legally compliant prior written notice of Upland's November 18, 2016 decision not to provide Student Kurzweil as assistive technology after Upland offered it to Student in the October 31, 2016 IEP?

8.  Did Upland deny Student a FAPE by failing until January 2020 to file a request for a due process hearing to obtain a determination from OAH that the October 31, 2016 IEP offered Student a FAPE, after Parent did not consent?

9.  Did Upland deny Student a FAPE by failing, before August 21, 2017, and thereafter, to convene an annual meeting to develop an IEP for the 2017-2018 school year and 2018 extended school year?

10.  Did Upland deny Student a FAPE by failing to convene an IEP team meeting before August 21, 2017, and thereafter, to review independent assessments by Dr. Stephey and Lindamood-Bell?

11.  Did Upland deny Student a FAPE by failing to timely complete assessments to which Parent consented on December 13, 2017?

12.  Did Upland deny Student a FAPE by failing to file a request for a due process hearing to obtain OAH authorization to conduct assessments to which Upland contended Parents did not provide consent in December 2017?

13.  Did Upland deny Student a FAPE by failing to provide Parent prior written notice in response to Parent's June 6, 2018 request for independent educational evaluations?

14.  Did Upland deny Student a FAPE by failing to provide Parent prior written notice in response to Parent's July 26, 2018 request for independent educational evaluations?

---

15. Did Upland deny Student a FAPE by failing to timely assess Student, after Parent's July 26, 2018 request, in all areas of suspected disability, specifically:

    a.  Sensory integration praxis;
    b.  Visual motor integration;
    c.  Visual perceptual skills;
    d.  Magnocellular needs;
    e.  The need for vision therapy;
    f.  The need for an interactive metronome; and
    g.  The need for assistive technology?

<u>Upland's Issues</u>

16. Was Student a parentally placed private school student for the 2017-2018 and 2018-2019 school years and, therefore, not entitled to a FAPE from Upland?

17. Was Student entitled to a FAPE from Upland during the 2017-2018 and 2018-2019 school years after Parents refused to consent to the September 30, 2016, and October 24, 2016 assessment plans?

18. If Upland was obligated to have an IEP in place for Student during the 2017-2018 and 2018-2019 school years, did the October 31, 2016 IEP constitute a FAPE, and continue to be in effect/available to Student through the final date of Student's eligibility for special education and related services?

(OAH Decision at 3-6.)

On November 24, 2020, the ALJ issued a decision in the Consolidated Case and concluded the following:

- UUSD prevailed on all issues—all S.L.'s requests for relief are denied. [3]
- S.L. was not eligible for special education and related services after June 30, 2017, and was not entitled to a FAPE from UUSD thereafter.

(<u>Id.</u> at 126-27.)

On February 22, 2021, Plaintiffs appealed the OAH Decision to this Court. (Dkt. No. 1.)

//
//
//

---

[3] The ALJ did not decide on Issues 16 and Issue 18 on the basis that "the outcome of Issue 17 determined the legal question" raised in both Issues 16 and 18. (OAH Decision at 126.)

**D. Standard of Review**

Findings of fact can be overturned only when clearly erroneous. <u>Amanda J. ex rel. Annette J. v. Clark County School District</u>, 267 F.3d 877, 887 (9th Cir. 2001); <u>see</u> Federal Rule of Civil Procedure 52(a). A finding of fact is clearly erroneous when the evidence in the record supports the finding but "the reviewing court is left with a definite and firm conviction that a mistake has been committed." <u>Id.</u> (citing <u>Burlington Northern, Inc. v. Weyerhaeuser Co.</u>, 719 F.2d 304, 307 (9th Cir. 1983).

**E. Discussion**

Given the factual nature of the issues raised in the OAH Hearing, Ms. Loof's testimony and credibility are determinative. As part of the OAH Hearing, the ALJ heard Ms. Loof's testimony. (AR at 3060.) The ALJ relied on Ms. Loof's "restrictions, behaviors and interferences" with UUSD's attempts to conduct assessments. (OAH Decision at 19-20.) The ALJ found that Ms. Loof lacked credibility in her explanations and feigned uncertainty and confusion to achieve her desired outcome, "[Ms. Loof] simply did not want the District to assess [S.L.]." (OAH Decision at 34.) The ALJ further found that Ms. Loof did not consent to UUSD's assessment plan, and that any pretense of consent was vitiated by Ms. Loof's many conditions—the ALJ found that Ms. Loof refused to sign relevant assessment plans, drafted letters that stated she did not provide consent, requested information she had already been given on prior occasions, and requested to control the instruments used by UUSD in the assessments. (OAH Decision at 113-114.) The ALJ based its conclusion that UUSD did not deny S.L. a FAPE in part on the findings above along with the finding that Ms. Loof repeatedly refused to consent to assessment plans. (OAH Decision at 122-126.)

The Court has reviewed the record and Ms. Loof's testimony and finds that the ALJ was in the best position to evaluate Ms. Loof's credibility in relation to her involvement and potential interference with the issues in question. The Court finds that the ALJ's findings align with the administrative record. Most significantly, the ALJ decided that S.L. was no longer eligible for special education as of June 30, 2017 based on her factual findings and credibility determination of Ms. Loof. (<u>See</u> OAH Decision.) Plaintiffs fail to proffer any evidence that would leave the Court with "a definite and firm conviction that a mistake has been committed." <u>Burlington Northern, Inc.</u>, 719 F.2d, at 307. The Court finds that the ALJ's findings were "thorough and careful" and that the ALJ engaged in a "complete factual background as well as a discrete analysis supporting the ultimate conclusions" in the OAH Decision. <u>R.B. v. Napa Valley Unified School District</u>, 496 F.3d 932, 942 (9th Cir. 2007). As such, the Court **AFFIRMS** the ALJ's factual findings.

## II.  CONCLUSIONS OF LAW

Plaintiffs request partial reversal of the OAH Decision as to Issues 3, 5, 6, 8, 9, 10, 11, 12, and 15—along with a reversal of the finding that S.L. was "no longer eligible for special education as of June 30, 2017." (Complaint at 22.) While the Court defers to the ALJ's determination of

factual findings and conclusions, Issues 3, 5, 6, and 8 pertain to Plaintiffs' argument about allegedly time-barred claims as they relate to the Tolling Agreement. As such, the Court reviews the relevant issues below.

## A. Standard of Review

The IDEA requires that states and local educational agencies ("LEAs") that receive IDEA funds offer a FAPE to students who have qualifying disabilities. Fry v. Napoleon Community Schools, 580 U.S. 154 (2017). If a parent disagrees with what an LEA offers, she may file for a due process hearing. 20 U.S.C. § 1415(b)(6). Subject to limited exceptions, a request for a due process hearing must be filed within two years from the date the party initiating the request knew or had reason to know of the facts underlying the basis for the request. 20 U.S.C. § 1415(f)(3)(c), (D); Ed. Code, § 56505(l). Here, the Tolling Agreement provides that claims could be brought at the relevant time period if they were "raised in the original [2018 Complaint]." (Tolling Agreement ¶ (c).) The Court reviews the ALJ's conclusions of law under a de novo standard of review. M.M. v. Lafayette School District, 767 F.3d 842, 851 (9th Cir. 2014).

## B. Timeliness

Because the Court applies de novo review to the legal conclusions in the OAH Decision, no deference is given to the ALJ's decision as to the allegedly time-barred claims, and the Court merely evaluates the persuasiveness of each side's case and determines if Plaintiff has adequately established her claims. The Court determines that the issues that involve events of 2014, 2015 and 2016, including the October 31, 2016 IEP, were timely-raised, as they all fell under the purview of the Tolling Agreement.

Plaintiffs contend that the Tolling Agreement did not permit UUSD's "issues about 2016 it raised in its January 2020 due process complaint or issues about its IEP and offer of a FAPE from October 31, 2016, more than two years before the due process filing." (Plaintiffs' Brief at 8.) UUSD's January 2020 complaint raises three issues, only one which involves the time period in question: "Issue 3: To the extent that [UUSD] was obligated to have an IEP in place, whether [UUSD]'s October 31, 2016 IEP constituted a FAPE in the least restrictive environment, which continued to be in effect through the final date of [S.L.]'s eligibility for special education and related services." (AR at 172.) The Court finds that this issue is nearly identical to an issue originally raised in the 2018 Complaint and subsequently preserved by the Tolling Agreement: "Whether UUSD denied S.L. a FAPE at the October 31, 2016 IEP by failing to offer her an appropriate placement in the least restrictive environment ("LRE") for the 2016-2017 school year." (2018 Complaint at 9.) Plaintiffs more broadly claim that the "ALJ's determinations and findings regarding events of 2014, 2015, and even regarding the October 31, 2016 IEP were ultra vires" and requests that the Court vacate the ALJ's "sua sponte" findings as to Issues 3, 5, 6, and 8 on this basis. (Plaintiffs' Brief at 8.) The Court disagrees with Plaintiffs and finds that the relevant issues properly fall within the bounds of the Tolling Agreement and as such were appropriately addressed by the ALJ in the OAH Decision.

Of the issues raised on appeal by Plaintiffs, Issues 3, 5, 6, and 8 involve events from 2014-2016.  (See OAH Decision.)

- Issue 3 in the OAH Decision—whether UUSD denied S.L. a FAPE in the October 31, 2016 IEP—was originally raised in the 2018 Complaint as Issues 2, 4 and 5.  (See OAH Decision at 3; see 2018 Complaint at 9-11.)

- Issue 5 in the OAH Decision—whether UUSD denied S.L. a FAPE by failing to timely respond to Ms. Loof's October 31, 2016 request for independent educational evaluations—was originally raised in the 2018 Complaint as Issue 4. (See OAH Decision at 4; see 2018 Complaint at 10-11.)

- Issue 6 in the OAH Decision—whether UUSD denied S.L. a FAPE by failing to timely assess S.L., after Ms. Loof's October 31, 2016 request—was originally raised in the 2018 Complaint as Issue 3.  (See OAH Decision at 4; see 2018 Complaint at 10.)

- Issue 8 in the OAH Decision—whether UUSD denied S.L. a FAPE by failing until January 2020 to file a request for a due process hearing to obtain a determination from OAH that the October 31, 2016 IEP offered S.L. a FAPE—was originally raised in the 2018 Complaint as Issue 2.  (See OAH Decision at 5; see 2018 Complaint at 9.)

While Plaintiffs state that the ALJ's "application of the law was repeatedly incorrect," Plaintiffs do not elaborate or make any substantive legal arguments beyond the statute of limitations. (Plaintiffs' Brief at 8.)  The Court finds that all of the issues raised on appeal were properly raised at the OAH Hearing.  As such, the Court **AFFIRMS** the OAH Decision.

### III.  CONCLUSION

Based on its findings of fact and conclusions of law, the Court concludes that Plaintiffs have not adequately shown that the ALJ's factual findings were clearly erroneous, nor have Plaintiffs shown that any of the issues in the OAH Decision were time-barred.  Accordingly, the Court **AFFIRMS** the OAH Decision.  The Clerk is directed to close the case.

**IT IS SO ORDERED.**